**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CAROL WATSON, individually and on behalf of all others similarly situated, | ) ) | <u>**Jury Trial Demanded**</u>. |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. |
| | ) | |
| THE PNC FINANCIAL SERVICES GROUP, INC., TLF PROPERTY MAINTENANCE & SERVICES, LLC, and Doe Defendants 1-20 | ) ) ) | |
| | ) | |
| Defendants. | ) | |

**CLASS ACTION COMPLAINT**

NOW COMES Plaintiff, Carol Watson ("Ms. Watson"), individually and on behalf of all others similarly situated, by and through her attorneys, Progressive Law Group, LLC, The Chicagoland and Suburban Law Firm, P.C., and The Law Office of Kelli Dudley, and, based on personal knowledge as to matters pertaining to Ms. Watson, and upon information and belief following investigation of counsel, alleges as follows against The PNC Financial Services Group, Inc., TLF Property Maintenance & Services, LLC, and Does 1-20 (individually and collectively, the "Defendants"):

**INTRODUCTION**

1.      PNC and its agents are seeking to foreclose on Ms. Watson's property through the courts.  But, PNC is also pursuing its own methods of foreclosing on her property, independent of the courts.  Without Ms. Watson's knowledge or consent – and while Ms. Watson's home has been in foreclosure – PNC has forcibly entered and taken control of her property, (*e.g.* Defendants have changed the locks on the front and back doors, removed the storm door from the front entrance, and removed other personal possessions from the interior and exterior of the

home.)

2.      Ms. Watson seeks relief for herself and similarly situated home loan borrowers whose homes were unlawfully entered by PNC and its agents, including declaratory and injunctive relief, equitable relief, and damages.

## PARTIES, VENUE, AND JURISDICTION

3.      The PNC Financial Services Group, Inc., ("PNC") is a corporation doing business in the State of Illinois, which on information and belief has its principal place of business in Pittsburgh, Pennsylvania, and owns home loans and investments secured by Ms. Watson and other homeowners' properties.

4.      TLF Property Maintenance & Services, LLC ("TLF") is a limited liability company organized under the laws of the State of Illinois and provides property maintenance and verification services on properties, such as Ms. Watson's and other homeowners', on behalf of lenders such as PNC.

5.      Ms. Watson is a citizen of the State of Illinois and resides in this Judicial District.

6.      The Court has jurisdiction over this action under to 28 U.S.C. § 1331, 15 U.S.C. § 1692,  and 28 U.S.C. §§ 2201, 2202.

7.      The Court also has jurisdiction over the state law claims under 28 U.S.C.§ 1367 because those claims are so related to the federal claim that they form part of the same case or controversy.  As described below, Ms. Watson's state and federal claims arise out of a common nucleus of operative facts.

8.      Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Ms. Watson's claims arose in this District.

9.      At relevant times, PNC perpetuated its conduct below individually and/or by and

through its agents, including TLF and Doe Defendants, over whom PNC exerted operational control concerning the facts at bar and with whom PNC combined and conspired to commit the herein alleged misconduct.

10.    Ms. Watson is currently ignorant of the true names and capacities, whether individual, corporate, associate, or otherwise, of the Defendants sued herein under the fictitious names Doe Defendants 1 through 20, inclusive, and therefore, sues such Defendants by such fictitious names.  Ms. Watson will seek leave to amend her complaint to allege the true names and capacities of said fictitiously named defendants, if appropriate, when their true names and capacities have been ascertained.  Ms. Watson is informed and believes and based thereon alleges that each of the fictitiously named Doe Defendants is legally responsible in some manner for the events and occurrences alleged herein.

11.    Ms. Watson is informed and believes and based thereon alleges that Defendants were at relevant times acting as agents of and conspirators with PNC, and that acts alleged herein occurred within the course and scope of said agency, conspiracy or enterprise, and with the express and/or implied permission, knowledge, consent, authorization, and/or ratification of PNC; however, each of these allegations are deemed alternative theories whenever not doing so would result in a conflict with the other allegations.

## SUBSTANTIVE ALLEGATIONS

12.    PNC extended and/or maintained home loans (including ownership of the security interest in such loans) held by Ms. Watson and other home loan borrowers in the State of Illinois.

13.    On or about July 15, 2008, National City Bank, a non-party to this litigation, filed a Complaint to Foreclose Mortgage, in state court, based on alleged default by Ms. Watson.  In or around October 2008, PNC purchased National City Bank and thereby received assignment of

Ms. Watson's home loan, indicating that Ms. Watson was already in default on her home loan when PNC received assignment of her home loan.

14.     While foreclosure proceedings were pending before the state court, on or about November 18, 2010, PNC by its agents including TLF and Doe Defendants operating at PNC's direction, unlawfully, prior to entry of any court order of possession, and without obtaining permission from the court, forcibly entered Ms. Watson's home that is the subject of the foreclosure lawsuit, located at 5613 Howard, La Grange Highlands, Illinois, 60525.

15.     Ms. Watson is approximately 70 years old and was *living* at her home while this occurred. Indeed, on or about November 18, 2010, without notice to or consent by Ms. Watson, and while Ms. Watson was living at the house but was out of town visiting family, Defendants *broke into Ms. Watson's home*, removed personal property from the inside of the home and from the exterior of the home, changed the locks on her home doors, and locked her out, rendering her homeless.

16.     Ms. Watson was in the process of securing a loan modification with PNC at the time Defendants broke into and locked Ms. Watson out of her home.

17.     Defendants have deprived Ms. Watson of access to her home and her possessions in her home, including necessities of daily life. Further, Defendants removed personal property from the home (*e.g.* furniture, clothing, radios, television, cell phone, shoes, jewelry, and cash in the amount of approximately $400.00).

18.     Defendants also removed personal items from the exterior of Ms. Watson's home, including, for example, flowerpots, a wreath, and decorative reindeer. Defendants also removed a storm door from the front entrance of Ms. Watson's home.

19.    Such efforts to collect on PNC's asserted debt amount to an unlawful and unconscionable foreclosure process operated at the discretion of Defendants and independent of the courts.   Ms. Watson seeks commensurate injunctive and equitable relief.

20.    Defendants wrongfully and recklessly deprived Ms. Watson and similarly situated homeowners of their right to peaceful possession of their homes and caused them personal and real property damages, and other compensatory damages.

21.    The basis for such conduct stems, in substantial part, from the fact that given the massive and unwieldy volume of homes upon which PNC has sought to effect judicial foreclosure, PNC, individually or by its agents, at relevant times contracted with mortgage field service companies including TLF and Doe Defendants.

22.    TLF enforces security interests against properties like Ms. Watson's that are delinquent, *i.e.,* in default or foreclosure, by performing field services for lenders like PNC at such properties.  For example, TLF entered and secured and "winterized" their homes, and in the course of doing so, on behalf of lenders or their agents including PNC, shuts off the water supply to the home, adds antifreeze into toilets, sinks, and traps, and renders the home unable to be 'dewinterized' without a contractor.

23.    Doe Defendants likewise provide lender field services upon properties, like Ms. Watson's property, where the home loan borrower is in default, and against which lenders like PNC are seeking to "collect."   These services include eviction, purported occupancy verifications, stripping, securing and winterizing property, and other similar services.

24.    PNC authorized TLF and Doe Defendants to provide such services *during* loan delinquency and default periods and *during* the judicial foreclosure process – while Ms. Watson and other PNC homeowners still had a legal right to be in their homes, and in contravention of

the terms of their mortgages. Inasmuch as PNC unfairly and unlawfully charged the accounts of Ms. Watson and similarly situated PNC homeowners costs and monies for the provision of such services by TLF and Doe Defendants, with respect to the unlawful entries described herein, such charges are improper and unlawful and therefore should be deemed invalid by this Court.

25.    Applicable law provides that Ms. Watson and other similarly situated homeowners are entitled to possession of their property and homes until conclusion of the judicial foreclosure process, including judgment in favor of PNC, a court order of possession, sale approved by the court, and statutory waiting periods.

26.    The Illinois Mortgage Foreclosure Law ("IMFL") provides for judicial foreclosure. 735 ILCS 5/15-1101 *et seq*. Homeowners in Illinois are afforded, by law, a seven-month period of redemption after they are served with a mortgage foreclosure summons. 735 ILCS 5/15-1603. The actions of Defendants, described herein, deprive homeowners of the equity of redemption.

27.    PNC may take possession of a property in foreclosure only when authorized by applicable law, including, for example, pursuant to the IMFL or after entry of a judgment of foreclosure and through the thirtieth day after a foreclosure sale is confirmed. *E.g.,* 735 ILCS 5/15-1701(c).

28.    In order to secure and collect on property assets, Defendants operating at PNC's direction have unlawfully and without providing notice to or obtaining consent from Ms. Watson (hereinafter, "notice or consent"), entered Ms. Watson's and other similarly situated homeowners' homes in foreclosure, before the judicial foreclosure process was complete.

29.    Similarly situated homeowners other than Ms. Watson have lodged complaints alleging that PNC and its agents, operating at PNC's direction, have unlawfully and without

notice or consent entered the homes of other similarly situated homeowners in foreclosure, before the judicial foreclosure process was complete.

30.     According to one similarly situated homeowner, "PNC mortgage…send[s] a stranger banging on our door to verify we are indeed occupying the property. I am afraid to leave my home in fear they will enter my property….They [PNC] have hired [a third party property servicer] [who has] been on the property more than once….PNC has subcontracted with this company who's (sic) dealings with mortgage customers is less than ethical." http://realneo.us/content/trashouts-45-days-late-your-mortgage-payment.

31.     PNC is liable for the acts of its agents, and in fact has recklessly and carelessly failed to ensure that its agents, including TLF and Doe Defendants, acted in furtherance of PNC's asserted rights under its mortgages and comport with PNC's duties under applicable law.

## CLASS ALLEGATIONS

32.     Ms. Watson brings this Complaint individually and, pursuant to 735 ILCS 5/2-801 and 735 ILCS 5/2-802(b), as representative of the following Class of similarly situated individuals.

PNC CLASS

All PNC homeowners with a home in foreclosure whose homes PNC or its agents entered before PNC had a lawful right to possess the home.

PNC SUBCLASS

All PNC homeowners with a home in foreclosure, in the State of Illinois, whose homes PNC or its agents entered before PNC had a lawful right to possess the home.

PNC INJUNCTIVE RELIEF CLASS

All PNC homeowners, in the State of Illinois, who are in default on home loans owned, signed by or assigned to PNC.

Herein, "PNC homeowners" including persons with home loans or mortgages owned, signed by or assigned to PNC, including PNC ownership of security interests in such loans or in properties that secure such loans. Excluded from each Class[1] are Defendants' officers, directors and employees, Ms. Watson's counsel, and any member of the judiciary presiding over this action.

33.    Ms. Watson reasonably believes that the Class is so numerous that joinder of all members of the Class is impracticable.

34.    Ms. Watson's claims are typical of those of Class members.

35.    Defendants' unlawful conduct as set forth herein is generally applicable with respect to the Class as a whole, so that final injunctive relief or corresponding declaratory relief is appropriate.

36.    Ms. Watson will fairly and adequately protect the interests of the Class; Ms. Watson has no interests antagonistic to said Class members; and Ms. Watson has retained counsel competent and experienced in class action litigation.

37.    A class action provides a manageable method for fairly and efficiently adjudicating this controversy because, among other things, joinder of all members of the Class is impracticable, prosecution of individual actions risks inconsistent adjudications of the same matter, and many members of the Class cannot feasibly vindicate their rights by individual suits because they are indigent and their damages are outweighed by the burden and expense of litigating individual actions against Defendants.

38.    Common questions of law or fact exist as to all members of the Class and

---

[1] References herein to Class or Subclass members or to the Class and Subclass are to each Class and Subclass, unless expressly stated otherwise. Ms. Watson intends to amend her class allegations, including, for example, pursuant to discovery if appropriate, including to seek relief for PNC and other non-PNC home loan borrowers subject to TLF's or Doe Defendants' unlawful conduct, and to seek relief for similarly situated borrowers.

predominate over questions affecting individual members of the Class, including, without limitation, as follows:

    a.   Whether Defendants' conduct violates the FDCPA;

    b.   Whether Defendants' conduct violates the ICFA;

    c.   Whether Defendants committed trespass to land with regards to Ms. Watson's and Class members' property in violation of the common law;

    d.   Whether Defendants converted Ms. Watson's and Class members' property in violation of the common law;

    e.   Whether Defendants committed trespass to chattels with respect to Ms. Watson's and Class members' property in violation of the common law;

    f.   Whether Defendants' conduct was negligent with respect to Ms. Watson's and Class members' property in violation of the common law;

    g.   Whether PNC breached its mortgage contracts with Ms. Watson and the Class.

## CAUSES OF ACTION

39.    Ms. Watson brings each of the following causes of action individually and as representative of the Class, and in the alternative as required by applicable facts or law, except that Ms. Watson seeks relief for the Injunctive Relief Class only pursuant to Counts V and VIII below, and Ms. Watson seeks relief for the nationwide PNC Class only pursuant to Counts VI and VII below.

### Count I
### Trespass To Land

40.    Ms. Watson repeats and realleges the preceding allegations as though fully set forth herein.

41.     Ms. Watson has a mortgage with PNC, and PNC sought to foreclose on her home. *E.g.* ¶ 13.  On or about November 18, 2010, without notice to or consent by Ms. Watson, Defendants willfully, forcibly and illegally entered onto Ms. Watson's property and into her home, changed the home locks, and locked Ms. Watson out of her home that is the subject of the aforementioned foreclosure action.

42.     As a result of Defendants' willful, forcible and illegal entry into her home and as a result of Defendants having changed the home locks, Ms. Watson was deprived of access to her home and to her personal possessions contained therein, including the necessities of everyday living.  Consequently, Ms. Watson has had to make arrangements for temporary housing, and has incurred a host of damages.

43.     Defendants have perpetrated similar misconduct with respect to other homeowners.

44.     Defendants, by perpetrating their above-described conduct and unlawfully entering Ms. Watson and Class members' homes without notice or consent, have trespassed in violation of the common law.

45.     As a result of Defendants' trespass, Ms. Watson and the Class were damaged and are entitled to nominal, compensatory, and punitive damages.

### Count II
### Conversion

46.     Ms. Watson repeats and re-alleges the preceding allegations as though fully set forth herein.

47.     On or about November 18, 2010, Defendants forcibly entered Ms. Watson's home, and without notice or consent, removed the locks to Ms. Watson's home, changed the home locks, locked Ms. Watson out of her home and thereby exercised dominion and control

over Ms. Watson's home and her personal property contained therein (*e.g.* furniture, clothing, radios, television, cell phone, shoes, jewelry, and approximately 400 dollars in cash.)

48.     While Ms. Watson's home and personal property were in Defendants' control and Defendants had locked Ms. Watson out of her home, Defendants removed, without notice or consent, all of Ms. Watson's personal property from the interior of her home, including but not limited to furniture, clothing, radios, television, cell phone, shoes, jewelry, and cash in the amount of approximately $400.00.  Defendants also removed personal property from the exterior of Ms. Watson's home (*e.g.* flowerpots, a wreath, the front storm door, and decorative reindeer). As a matter of practice Defendants do not retain these items.  Rather, these items are no longer in the possession of the Defendants and have been destroyed or passed on to third-parties.

49.     Defendants have perpetrated similar misconduct with respect to homeowners similarly situated to Ms. Watson.

50.     By reason of said conversion, Ms. Watson and similarly situated homeowners have been damaged as set forth herein and above and are entitled to compensatory and consequential damages and equitable relief.

### Count III
### Trespass to Chattels

51.     Ms. Watson repeats and realleges the preceding allegations as though fully set forth herein.

52.     On or about November 18, 2010, without notice or consent, Defendants forcibly entered Ms. Watson's home, changed the home locks, removed all of Ms. Watson's personal possessions from the interior of the home, and removed items from the exterior of her home. Thus, Defendants have interfered with Ms. Watson's possessory interest in her personal possessions including, but not limited to, clothing, furniture, radios, television, cell phone, shoes,

jewelry, cash in the amount of approximately $400.00, flowerpots, a wreath, the front storm door, and decorative reindeer.

53.     By reason of said trespass to chattels with respect to Ms. Watson, and as to similarly situated homeowners, Ms. Watson and similarly situated homeowners have been damaged as set forth herein and above and are entitled to compensatory damages.

**Count IV**
**Negligence**

54.     Ms. Watson repeats and realleges the preceding allegations as though fully set forth herein.

55.     PNC, TLF, and Doe Defendants owe Ms. Watson and other  PNC homeowners a duty to use reasonable care when taking or establishing control over their personal and real property, including when Defendants forcibly entered and locked Ms. Watson out of her home in or around November 2010 and thereafter as more fully set forth above.

56.     Defendants failed to use reasonable care as Defendants failed to safeguard and, in fact, removed Ms. Watson and Class members' property without notice or consent.

57.     It was reasonably foreseeable to Defendants that an injury would occur as a result of locking Ms. Watson out of her home and removing and/or destroying her property, without notice or consent or court order during the foreclosure process.

58.     The burden to Defendants of guarding against such an injury is minimal, involving, for example, exercising such care by providing notice to homeowners like Ms. Watson prior to forcibly entering their homes or destroying/removing their property, and by taking inventory and safeguarding homeowners' personal property.

59.     The consequence to the Defendants of imposing upon them the burden of providing notice to homeowners whose homes are delinquent, in default, and/or in foreclosure

would be minimal, and in fact would benefit Defendants as it would provide efficiencies and accuracies in Defendants' foreclosure procedures.

60.     Defendants exercised control over Ms. Watson and Class members' personal and real property after they forcibly and unlawfully entered the property and changed the locks, but, in breach of their duties of reasonable care, failed to care for said property; to the contrary, Defendants destroyed, removed, and took Ms. Watson's personal property, failed to comply with applicable law, failed to implement procedures to sufficiently ensure compliance with applicable law and to avoid such property destruction and damage, and failed to properly track judicial foreclosure proceedings to ensure home entry of Ms. Watson and other PNC homeowners' properties in foreclosure was lawful, as more fully set forth above.

61.     Ms. Watson and similarly situated homeowners were damaged as a result of PNC, TLF, and Doe Defendants' aforesaid breaches as set forth herein and above, and are entitled to damages in amounts to be determined at trial.  At relevant times Defendants had exclusive knowledge of the aforesaid breaches; Ms. Watson and the Class could not have known of said breaches until they were damaged.

**Count V**
**Unfair Practices In Violation of the Illinois Consumer Fraud Act**

62.     Ms. Watson repeats and re-alleges the preceding allegations as though fully set forth herein.

63.     The Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA) prohibits unfair and deceptive conduct.  815 ILCS 505/2 *et seq.*

64.     Ms. Watson is a person over 65 years of age for purposes of 815 ILCS 505/7(c). As more fully set forth above, PNC, TLF, and Doe Defendants have committed acts that are oppressive, unethical, immoral, subversive of the judicial foreclosure process, offend public

policy, and have caused and are likely to cause substantial injury to Ms. Watson and the Class. For instance, PNC, TLF, and Doe Defendants have committed trespass against Ms. Watson and the Class, forcibly entered their property, acted negligently in failing to safeguard and secure Ms. Watson's property, failed to respect Ms. Watson and Class members' privacy, and have acted contrary to and in violation of Illinois mortgage foreclosure law. Further, all Defendants have converted and committed trespass to chattels by interfering with Ms. Watson and the Class' personal property. (*E.g.* ¶¶ 17-18.)

65. However, in or around November 18, 2010, Ms. Watson returned home from a three or four-day trip to Michigan to find that PNC and its agents, without notice or consent had locked her out of her home. PNC thus gained control over Ms. Watson's property after forcibly entering her home and changing her locks on or about November 18, 2010. Ms. Watson's storm door to the front entrance had been removed along with the removal of outside items of personal property (e.g. flowerpots, wreath, and decorative reindeer.)

66. Defendants locked Ms. Watson and Class members' homes, as more fully set forth above. PNC engages in a practice of unlawful home entry, which damages home loan borrower properties, without notice or consent, without due regard for obtaining permission of the court for homes in foreclosure, and in total disregard of the Illinois Mortgage Foreclosure Law such as the redemption period provision, or the provisions requiring a court order to take possession of the property.

67. PNC, TLF, and the Doe Defendants' carelessness and recklessness in forcibly entering Ms. Watson and Class members' property, as set forth above, caused damage to Ms. Watson and Class members, disregards their rights and is unfair within the meaning of the ICFA.

14

68.     Ms. Watson and Class members are legitimately afraid and concerned that Defendants will continue to perpetrate their above-described unlawful conduct, which invades upon their privacy and basic living needs.

69.     PNC, TLF, and Doe Defendant's conduct is continuing in nature and is likely to continue.  Ms. Watson and the Class and Injunctive Relief Class are thus entitled to appropriate injunctive relief (including, for example, restoration of their possessions or equivalent value, a declaration that Defendants' lock-out practice is unlawful, an order prohibiting Defendants from continuing to perpetrate such conduct, and otherwise) and are also entitled to relief to avoid future harm.

70.     As a result of PNC, TLF, and the Doe Defendants' above-described unfair conduct, Ms. Watson and the Class sustained injuries, *inter alia,* to their personal and real properties and also consequential damages as more fully set forth above, and are entitled to actual, consequential and punitive damages and equitable relief.

### Count VI
### Violations of the Fair Debt Collection Practices Act

71.     Ms. Watson repeats and realleges the preceding allegations as though fully set forth herein.

72.     PNC, TLF and Doe Defendants are debt collectors and enforcers of a security interest within the meaning of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et. seq.* (FDCPA).

73.     The FDCPA broadly prohibits unfair or unconscionable collection methods.  The FDCPA also prohibits taking or threatening to take non-judicial action to effect dispossession or disablement of property, taking of property without required judicial process, and attempted collection of a debt not authorized by an agreement or permitted by law.

74.     A principle purpose of PNC's above-described conduct is to enforce security interests in homes like Ms. Watson's.  PNC accomplishes this end, *inter alia,* by prosecuting judicial foreclosure proceedings, and by contracting with, and issuing work orders to TLF and Doe Defendants in the stream of commerce, for the purpose of forcibly and unlawfully entering Ms. Watson and Class members' homes to enforce such interests, as more fully set forth above. PNC also regularly collects and attempts to collect debts asserted to be owed to others, such as other lenders.

75.     According to PNC, Ms. Watson went into default in paying off her mortgage/note in or around May 2008, and therefore she was delinquent in making such payments as of at least as far back as April 2008.  PNC received assignment of ownership in or security interest pertaining to Ms. Watson's home/loan after Ms. Watson was allegedly in default.

76.     As set forth more fully above, TLF and/or Doe Defendants unlawfully entered Ms. Watson's home, turned off the water, disabled toilets and sinks, and rendered the property uninhabitable.

77.     PNC, TLF, and Doe Defendants' forcible entry into the homes of Ms. Watson and the Class, without lawful right to do so – including changing the locks, and the above-described unlawful entry and lock-out of November 2010 with respect to Ms. Watson and her home – as more fully set forth above are efforts to collect a debt and enforce a security interest subject to the FDCPA.

78.     In violation of the FDCPA, *e.g.,* 15 U.S.C. § 1692(f), PNC, TLF, and Doe Defendants perpetrated their above described conduct with respect to Ms. Watson and the Class, and therefore wrongfully attempted to enforce security interests and to collect asserted debts, without notice and consent, without following the procedures set forth by the IMLF and other

applicable law described herein, and without having a legal right to possess, dispossess or disable Ms. Watson or Class members' properties.

79.     As a result of Defendants' above-described conduct and violation of the FDCPA, Ms. Watson and the Class have been injured and are entitled to damages permitted by the FDCPA including statutory and actual damages.

**Count VII – Against PNC**
**Breach of Contract**
**(Breach of Express Contract Provisions**
**and Covenant of Good Faith and Fair Dealing)**

80.     Ms. Watson repeats and realleges paragraphs 1-39 above as though fully set forth herein.

81.     At relevant times PNC purportedly succeeded to National City Bank as party to Ms. Watson's loan contract ("contract").  Contracts, which contain substantially similar language, are likewise in effect for Class members.

82.     PNC forcibly entered Ms. Watson and other PNC homeowners' properties without notice or consent, as described above.

83.     Ms. Watson and similarly situated homeowners fulfilled the relevant obligations pursuant to their herein-described contract, including the provisions described herein.

84.     Ms. Watson and similarly situated PNC homeowners' contracts do not authorize PNC's aforesaid conduct, including without limitation the destruction and/or removal of Ms. Watson's personal and real property as described above.  PNC breached the terms of the contract by taking action and by the destruction and/or removal of property on or about November 18, 2010, as set forth above, that is nowhere authorized by the contract.  *See* Exhibit A (relevant excerpts of Ms. Watson's mortgage contract) ¶ 9.

85.     Additionally, Ms. Watson's mortgage contract states that the lender may perform an interior inspection of Ms. Watson's property "if it has reasonable cause."  *See* Ex. A ¶ 7. PNC breached the contract by failing to have reasonable cause to inspect the interior of Ms. Watson's property, and by failure to give Ms. Watson notice, prior to forcibly entering the property in or around November 2010.

86.     Furthermore, Ms. Watson's mortgage contract states that the "Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause" for that inspection.  PNC breached the contract by failing to give Ms. Watson notice specifying such reasonable cause at the time of or prior to inspecting the interior of the property in or around November 2010.  *See* Ex. A ¶ 7.

87.     Based upon Ms. Watson's experience it is clear that PNC maintains no checklist or procedure by which to ensure compliance with this provision prior to conducting an interior inspection or entering the interior of the homes of PNC homeowners like Ms. Watson.

88.     Finally, by the express terms of the contract, PNC is obligated to abide by applicable federal and state law requirements and limitations, including for example the Illinois Mortgage Foreclosure Law, the ICFA, the FDCPA, and common law including without limitation, trespass, conversion, negligence, and breach of contract.  Specifically, Ms. Watson's mortgage contract is expressly "governed by federal law and the law of the jurisdiction in which the Property is located.  All rights and obligations contained in the Security Instrument are subject to any requirements and limitations of Applicable Law…." Ex. A  ¶ 16.   PNC breached this term of the contract by failing to abide by said obligations, as more fully set forth above.

89.     Moreover, PNC owes its PNC homeowners like Ms. Watson a duty of good faith and fair dealing as a matter of law.  PNC had all of the discretion in the manner in which it

secured its interests in PNC homeowners' properties that were delinquent, in default, and/or in foreclosure. Ex. A ¶ 9. ("Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and the rights under this security instrument."). PNC breached the implied covenant of good faith and fair dealing in performing its obligations under the contract and in interpreting such ambiguous contract provisions when it exercised this discretion arbitrarily, capriciously, and in a manner inconsistent with such language, and inconsistent with Ms. Watson and other similarly situated PNC homeowners' reasonable expectations, when it forcibly entered said homes, destroyed property, changed the home locks and dispossessed PNC homeowners like Ms. Watson, without notice or consent – all while PNC homeowners, including Ms. Watson, had a right to possession.

90.     PNC has perpetrated said breaches not only as to Ms. Watson but also with respect to Class members.

91.     As a result of PNC's aforesaid breaches, Ms. Watson and Class members were damaged as more fully set forth above and are entitled to compensatory and consequential damages.

**Count VIII**
**Declaratory Judgment**

92.     Ms. Watson repeats and realleges the preceding allegations as though fully set forth herein.

93.     Ms. Watson and the Class (and Injunctive Relief Class) members on the one hand, and the Defendants on the other hand, have adverse legal interests, and there is a substantial controversy between the parties that the Court can resolve by declaring the parties' respective rights.

94. PNC, TLF and Doe Defendants' conduct violates the Illinois Mortgage Foreclosure Law, the FDCPA and the ICFA, as more fully set forth above.

95. Ms. Watson and the Class (and Injunctive Class) are entitled to a declaration, *inter alia,* that PNC, TLF, and Doe Defendants have no lawful authority to enter, control or possess Ms. Watson's and Class members' homes, including deprivation and control of personal possessions therein, without notice or consent, unless or until authorized by such applicable law.

96. Inasmuch as PNC has taxed costs and charges, for Doe Defendants' aforesaid entries and property services, to the accounting of monies owed by Ms. Watson and the Class pursuant to their Notes/Mortgages, Ms. Watson seeks a declaration that such charges are unlawful and an order providing for a refund or credit of such charges taxed to the Class including associated interest, financial charges and damages, and an appropriate accounting thereof.

97. Ms. Watson and the Class (and Injunctive Class) are entitled to a declaration that that PNC, TLF, and Doe Defendants have no lawful authority to collect on debts and secure their interests by forcibly entering, controlling and/or possessing Ms. Watson and Class members' homes including without notice or consent, and in violation of applicable law.

98. Ms. Watson and the Class seek corresponding injunctive relief, including restitution and other equitable relief and property damage restoration, and a Court order directing Defendants to refrain from their unlawful premature entry and control over Class members' homes.

## PRAYER FOR RELIEF

WHEREFORE, Ms. Watson prays for judgment against Defendants as follows:

a. Certify the Classes and Subclass defined above, and designate Ms. Watson as a class representative and her counsel as class counsel;

20

b.      Declare the rights of the parties as set forth above, *e.g.* ¶¶ 93-97;

c.      Find that PNC, TLF and Doe Defendants violated the common law of conversion, trespass, trespass to chattels, and negligence;

d.      Find that PNC, TLF and Doe Defendants violated the Illinois Consumer Fraud and Deceptive Business Practices Act, and the Fair Debt Collection Practices Act;

e.      Find that PNC breached the contracts with Plaintiff and the Class;

f.      Order injunctive relief, including enjoining Defendants from continuing to assert or attempt to collect purported debts, and from continuing to possess or enter Class member homes, in unlawful fashion and/or without notice or consent as set forth above;

g.      Award appropriate restitution to Ms. Watson and Class members, require Defendants to account for all monies improperly received as a result of their aforementioned conduct, enjoin Defendants from dispersing said monies, and impose a constructive trust on said monies until further order of the Court;

h.      Award all applicable damages, including any statutory, actual, additional, economic, compensatory, exemplary and punitive damages;

i.      Award reasonable attorney's fees and costs including expert costs; and

j.      Provide such other and further relief that the Court deems proper.

## JURY DEMAND

Ms. Watson demands a trial by jury as to all matters so triable.

> Respectfully submitted,
>
> CAROL WATSON, individually and on behalf of all others similarly situated
>
> By:  s/Mark Bulgarelli
>      Counsel for Carol Watson

Progressive Law Group LLC
Mark Bulgarelli
Ilan Chorowsky
505 North LaSalle, Suite 350
Chicago, IL 60654
Ph: 312-787-2717

The Law Office of Kelli Dudley
Kelli Dudley
9130 S. Houston Ave., 1st Floor
Chicago, IL 60617-4319
Ph: 312-771-9770

The Chicagoland & Suburban Law Firm, P.C.
Amir Mohabbat
248 S. Marion St., Suite 104
Oak Park, IL 60302
Ph: 815-501-1345