UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CAROL WATSON, individually and on behalf of all other similarly situated, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. 11 C 4318<br>) |
| THE PNC FINANCIAL SERVICES GROUP, INC.; TLF PROPERTY MAINTENANCE & SERVICES, LLC; and DOE DEFENDANTS 1-20, | ) Judge John W. Darrah<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Carol Watson filed a class-action Complaint against The PNC Financial Services Group, Inc. ("PNC"); TLF Property Maintenance & Services, LLC ("TLF"); and Doe Defendants 1-20, based on Defendants' efforts at foreclosing on Watson's property. Watson alleges trespass to land (Count I), conversion (Count II), trespass to chattels (Count III), negligence (Count IV), violation of the Illinois Consumer Fraud Act ("ICFA") (Count V), violation of the Fair Debt Collection Practices Act ("FDCPA") (Count VI), breach of contract (Count VII), and declaratory judgment (Count VIII). Before the Court is PNC's Motion to Dismiss Counts V through VIII of Watson's Complaint.

**BACKGROUND**

The following facts are drawn from Watson's Complaint and are accepted as true for purposes of the Motion to Dismiss. *See Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010).

PNC is a corporation that does business in Illinois and has its principal place of business in Pittsburgh, Pennsylvania. (Compl. ¶ 3.) TLF is a limited liability company organized under the laws of Illinois and provides property maintenance and verification services on properties on behalf of lenders, such as PNC. (*Id.* ¶ 4.) Watson is a citizen of Illinois. (*Id.* ¶ 5.) This Court has jurisdiction over Watson's federal claims based on federal-question jurisdiction and over her state-law claims based on supplemental jurisdiction. *See* 28 U.S.C. §§ 1331 & 1367.

On July 15, 2008, National City Bank filed a complaint to foreclose mortgage in state court, based on an alleged default by Watson on her home loan. (*Id.* ¶ 13.) In October 2008, PNC purchased National City Bank and assumed Watson's home loan. (*Id.*) While Watson's foreclosure proceedings were pending before the state court, on November 18, 2010, PNC, TLF, and the Doe Defendants entered Watson's home that is the subject of the foreclosure lawsuit, located at 5613 Howard, La Grange Highlands, Illinois, 60525. (*Id.* ¶ 14.) Watson was living at her home but was out of town at the time Defendants entered her home. (*Id.* ¶ 15.) Defendants entered Watson's home without a court order, removed Watson's personal property from inside of the home and from the exterior of the home, and changed the locks on the doors of her home. (*Id.*)

Defendants removed personal property and cash, in the amount of approximately $400. (*Id.* ¶ 17.) When Watson returned from her travels, she was locked out of her home. (*Id.*) At the time Defendants entered Watson's home, she was in the process of securing a loan modification with PNC. (*Id.* ¶ 16.)

As the basis of her class allegations, Watson alleges that Defendants engage in conduct, similar to that relating to Watson's home, on a wide-scale basis. PNC seeks judicial foreclosure on a high volume of homes and contracts with mortgage-field companies, including TLF and Doe Defendants, to help effectuate the foreclosures. (*Id.* ¶ 21.) TLF enforces security interests against properties, like Ms. Watson's, that are in default or foreclosure, by performing field services for lenders like PNC at such properties. (*Id.* ¶ 22.) Watson states that TLF enters, secures, and "winterizes" homes, by shutting off the water supply to the homes, adding antifreeze into toilets, sinks, and traps, thereby rendering the home unable to be "dewinterized' without a contractor. (*Id.*) Doe Defendants also provide lender field services for properties, like Watson's property, where the home loan borrower is in default, and against which lenders like PNC are seeking to foreclose the mortgage. (*Id.* ¶ 23.) These services include eviction, purported occupancy verifications, stripping, securing and winterizing property, and other similar services. (*Id.*) Watson further alleges that PNC authorizes TLF and Doe Defendants to provide these services during the loan delinquency and judicial foreclosure process when homeowners have a legal right to be in their homes. (*Id.* ¶ 24.)

## LEGAL STANDARD

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint. *Christensen v. Cnty. of Boone*, 483 F.3d 454, 458 (7th Cir. 2007). Under the federal notice pleading standards, "a plaintiff's complaint need only provide a short and plain statement of the claim showing that the pleader is entitled to relief, sufficient to provide the defendant with fair notice of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (internal quotations omitted). When considering a motion to dismiss under Rule 12(b)(6), the complaint is construed in the light most favorable to the plaintiff; all well-pleaded factual allegations are accepted as true, and all reasonable inferences are construed in the plaintiff's favor. *Id.* However, a complaint must allege "enough facts to state a claim to relief that is plausible on its face" to survive a motion to dismiss. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007). For a claim to have facial plausibility, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). Thus, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Further, the amount of factual allegations required to state a plausible claim for relief depends on the complexity of the legal theory alleged. *Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797, 803 (7th Cir. 2008).

## ANALYSIS

*ICFA Claim (Count V)*

The ICFA makes it unlawful to engage in:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce . . . whether any person has in fact been misled, deceived or damaged thereby.

815 ILCS 505/2. The ICFA provides redress not only for deceptive business practices, but also for business practices that, while not deceptive, are unfair. *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (2002) (*Robinson*).

Watson must establish five elements under the ICFA: (1) a deceptive act or unfair practice occurred, (2) the defendant intended for plaintiff to rely on the deception, (3) the deception occurred in the course of conduct involving trade or commerce, (4) the plaintiff sustained actual damages, and (5) such damages were proximately caused by the defendant's deception. *Dubey v. Public Storage, Inc.*, 918 N.E.2d 265, 277 (Ill. App. Ct. 2009).

Watson alleges that PNC engaged in an unfair practice under the ICFA by breaking into and padlocking Watson's home and dispossessing her of her property, without notice or court approval. (Compl. ¶¶ 62-70.) That practice, Watson claims, violated the Illinois Mortgage Foreclosure Law ("IMFL"). *See* 735 ILCS 5/15-1508(b-5); 735 ILCS 5/15-1701(b)-(c).

To determine whether a business practice is unfair, the court considers: "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers." *See Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 961 (Ill. 2002) (*Robinson*)

(citing *FTC v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244 n. 5 (1972)). "All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Robinson*, 775 N.E.2d at 961. Unfairness under the ICFA "depends on a case-by-case analysis." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 935 (7th Cir. 2010).

PNC argues that Watson's ICFA claim should be dismissed because the alleged improper entry onto Watson's property does not describe an act or practice that has taken place "in the conduct of any trade or commerce." PNC impliedly concedes that the home loan issued to Watson did involve trade or commerce but argues that the subsequent alleged trespass – six years later – is an independent event that does not relate to the loan origination. (Reply at 2.)

The ICFA defines the terms "trade" and "commerce" as "the advertising, offering for sale, sale, or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situated, and shall include any trade or commerce directly or indirectly affecting the people of this State." 815 ILCS 505/1(f).

In contrast to the allegations in this case, almost all cases brought by mortgagors alleging violations of the ICFA involve unfair or deceptive practices conducted by a defendant at the time of loan origination. *See, e.g., Ware v. Indymac Bank, FSB*, 534 F. Supp. 2d 835, 842 (N.D. Ill. Feb. 14, 2008) (allegations that lender ratified use of inflated income and asset information during the course of loan origination was sufficient

6

to state claim under ICFA); *Reiser v. Residential Funding Corp.*, 420 F.Supp.2d 940, 948 (S.D. Ill. 2004) (allegations that lender failed to disclose overcharges to mortgagors was succulent to state claim under ICFA).

Watson cites two cases from this district to support her argument that PNC's alleged conduct involves trade or commerce – neither are persuasive. The alleged fraud in *Martinez v. Freedom Mortg. Team, Inc.*, 527 F. Supp. 2d 827 (N.D. Ill. 2007) (*Martinez*), occurred at the time of loan origination and thus the case is factually inapposite. In *Martinez*, the court held that plaintiff's allegations that defendants "arrang[ed] for a fraudulently inflated appraisal and misrepresent[ed] the loan terms and monthly payments plainly qualify as deceptive." *Id.* at 836. *Boyd v. U.S. Bank*, 787 F. Supp. 2d 747 (N.D. Ill. 2011) (*Boyd*), however, involved circumstances substantially identical to those presented. In *Boyd*, the court held that plaintiff's allegation that defendants engaged in an unfair practice under the ICFA by breaking into and padlocking his home and dispossessing him of his property, without notice or court approval, was sufficient to state a claim under Section 2 of the ICFA. *Id.* at 755.[1] PNC has not cited a case in which a court has held that the conduct alleged by Watson does *not* constitute trade or commerce.

"Illinois courts have repeatedly stressed the 'broad protective philosophy'" of the ICFA. *Thacker v. Menard, Inc.*, 105 F.3d 382, 386 (7th Cir. 1996) (citing *Perona v. Volkswagen of America, Inc.*, 658 N.E.2d 1349, 1352 (Ill. App. Ct. 1995). The ICFA may be employed "to the utmost degree in eradicating all forms of deceptive and unfair

---

[1] In *Boyd*, however, the defendants did not challenge whether defendants' conduct was taken in "trade or commerce," and the court did not address the issue presented here.

business practices and to grant appropriate remedies to defrauded consumers." *Warren v. LeMay*, 491 N.E.2d 464, 472 (Ill. App. Ct. 1986). Courts liberally construe the ICFA to effectuate its purpose. *See Kelly v. Sears Roebuck & Co.*, 720 N.E.2d 683, 690 (Ill. App. Ct. 1999) ("The Illinois Consumer Fraud Act should be liberally construed.").

With these principles in mind and noting that the ICFA's definition of "trade and commerce" is broad, it is reasonable to construe the ICFA's definition of "trade and commerce" to include the conduct alleged by Watson. The definition of "trade and commerce" certainly includes mortgage transactions. 815 ILCS 505/1(f) (defining "trade" and "commerce" to include "offering for sale, sale . . . of . . . any property, tangible or intangible."). Watson's allegations regarding PNC involve conduct that relates to Watson's loan origination and thus plainly involves conduct in trade or commerce. Accordingly, PNC's Motion to Dismiss Count V is denied.

*FDCPA Claim (Count VI)*

The FDCPA provides that a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f(6). Watson alleges that PNC used unfair or unconscionable means to collect a debt when it dispossessed Watson's home without a foreclosure order. In its Motion to Dismiss, PNC argued that Watson's allegations do not involve "debt collection," as defined by the FDCPA. In an argument raised for the first time in its reply, PNC argues that Watson's claim should be dismissed because it is not a "debt collector" as defined by the FDCPA.

But "it is well-established that arguments raised for the first time in the reply brief are waived." *Mendez v. Perla Dental*, 646 F.3d 420, 423 (7th Cir. 2011); *United States v.*

8

*Dabney*, 498 F.3d 455, 460 (7th Cir. 2007); *United States v. Blaylock*, 413 F.3d 616, 619 (7th Cir. 2005). "The reason for th[e] rule of waiver is that a reply brief containing new theories deprives the respondent of an opportunity to brief those new issues." *Wright v. United States*, 139 F.3d 551, 552 (7th Cir. 1998).

Therefore, left standing is PNC's argument that Watson's allegations do not relate to debt collection. At the time the entry took place on November 18, 2010, PNC argues that because the court had already entered judgment of foreclosure, Defendants had possession of Watson's home and entry into Watson's home was not for the purposes of debt collection. PNC's argument is without merit. PNC concedes that the court's order of possession was stayed on May 4, 2010. Therefore, it logically follows that foreclosure proceedings were ongoing at the time Defendants entered Watson's home on November 18, 2010. (Resp. at 6 & n.4.) PNC's response that "[w]hile it is true that the foreclosure court stayed granting PNC *possession* of the property, the order *did not* vacate the sale or otherwise unwind it" is simply not persuasive. (Reply at 7 (emphasis in original).) On November 18, 2010, PNC entered Watson's property without a foreclosure order and while foreclosure proceedings were pending in state court.

PNC presents no other arguments against Watson's claim. Accordingly, at this stage of litigation, Watson has sufficiently stated a claim under the FDCPA.

*Breach of Contract (Count VII)*

Watson alleges that PNC breached her mortgage contract when it entered her property without a foreclosure order. (Compl., ¶ 84 & Ex. A.) PNC argues that Watson's breach-of-contract claim should be dismissed because Watson has not alleged

9

that she performed her obligations under the contract. To state a breach-of-contract claim under Illinois law, a plaintiff must plead: (1) the existence of a valid and enforceable contract; (2) plaintiff's substantial performance; (3) defendant's breach; and (4) damages. *See Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010); *Carlton at the Lake, Inc. v. Barber*, 928 N.E.2d 1266 (Ill. 2010).

Watson alleges that "Ms. Watson and similarly situated homeowners fulfilled the relevant obligations pursuant to their herein-described contract, including provisions described herein." (Compl. ¶ 83.) PNC argues that because Watson failed to make her loan payments, she did not perform under the terms of her mortgage contract. This is proven, PNC argues, because Watson conceded she pled that she was "already in default" at the time PNC purchased National City and because the court entered a foreclosure order. (Reply at 9.) PNC's arguments are misplaced because they require factual determinations that are premature at this stage of litigation. Watson has pled that she performed under the terms of her mortgage contract and has thus shown a plausible claim for relief at this stage of litigation.

In the same count, Watson brings a claim for breach of the covenant of good faith and fair dealing, which PNC argues should be dismissed because Illinois law does not permit this as a separate claim apart from breach of contract. The Illinois Supreme Court has determined that the covenant of good faith and fair dealing is a rule of construction, not an independent source of tort liability. *See Voyles v. Sandia Mortg. Corp.*, 196 Ill.2d 288, 297 (2001). Although "every contract implies good faith and fair dealing between the parties," Illinois law does not recognize the covenant of good faith and fair dealing as

an independent source of duties. *See Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1443 (7th Cir. 1992). Watson is not precluded from employing the covenant of good faith and fair dealing as a rule of construction in later stages of litigation, but Watson's claim for breach of the covenant of good faith and fair dealing in Count VII is dismissed with prejudice.

*Declaratory Judgment (Count VIII)*

In Count VIII, Watson requests that the Court enter a declaratory order that: (i) Defendants' "conduct violates the IMFL, FDCPA, and ICFA"; (ii) Defendants "have no lawful authority to enter, control, or possess Watson's and Class members' homes . . . without notice or consent, unless or until authorized by such applicable law."; (iii) any costs taxed or charged by PNC for Defendants' entry and property services are unlawful; and (iv) Defendants "have no lawful authority to collect on debts and secure their interests by forcible entering, controlling, or possessing Ms. Watson's and Class members' homes including without notice or consent, and in violation of applicable law." (Compl. ¶¶ 94-97.)

The Declaratory Judgment Act provides, "[i]n a case of actual controversy brought within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance

of a declaratory judgment." *Wisconsin Cent., Ltd. v. Shannon*, 539 F.3d 751, 759 (7th Cir. 2008) (citing *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007).

PNC argues that Watson's claim fails because she seeks declaratory relief for conduct that had occurred, and, therefore, there is no actual controversy. Watson concedes that she does not seek redress for PNC's past conduct; but, rather, in light of her pending foreclosure proceedings, Watson seeks declaratory relief as to the ongoing activities and practices of PNC and other Defendants. (Resp. at 13.) Watson has alleged an "actual controversy," such that her request for declaratory judgment raises a plausible claim for relief.

PNC further argues that Watson lacks standing to pursue a declaratory judgment on behalf of a class that has not yet been certified. PNC's reliance on *McKenzie v. City of Chicago*, 118 F.3d 552, 555 (7th Cir. 1997) (*McKenzie*), is misplaced. In *McKenzie*, the district court granted an injunction against a city ordinance, rather than granting injunctive relief tailored narrowly to the plaintiffs. The plaintiffs in *McKenzie* had filed a putative class action, but the court had not addressed class certification at the time the injunction was granted. The Court of Appeals reversed the district court's order, holding, "the fundamental problem with this injunction is that plaintiffs lack standing to seek – and the district court therefore lacks authority to grant – relief that benefits third parties." *Id.* at 555.

By contrast here, the merits of Watson's request for declaratory judgment is not before the Court. At this stage of litigation, the Court need only resolve whether Watson has stated a claim to relief that is plausible on its face to survive a motion to dismiss.

12

Watson has done so here. Accordingly, PNC's Motion to Dismiss is denied with respect to Count VIII.

## CONCLUSION

For the reasons stated above, PNC's Motion to Dismiss Counts V-VIII [19] is denied as to Counts V, VI, and VIII. With respect to Count VII, PNC's Motion is denied as to Watson's breach-of-contract claim and granted with prejudice as to Watson's claim for breach of the covenant of good faith and fair dealing.

Date: 1-19-12

JOHN W. DARRAH
United States District Court Judge